## SUSQUEHANNA COAL CO. v. MAYOR AND COMMON COUNCIL OF CITY OF SOUTH AMBOY et al.

### (Circuit Court, D. New Jersey. January 20, 1911.)

1. JUDGMENT (§ 828*)—DECREE OF STATE COURT—RES JUDICATA.

Where complainant elected to test in the state courts the legality of certain state taxes, assessed on coal claimed to have been passing through the state in interstate commerce when the taxes were assessed, a judgment confirming the taxes was res judicata, and precluded a subsequent

retrial of the question on a bill to set aside the taxes and restrain their collection in a federal court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

2. COMMERCE (§ 72*)—"INTERSTATE COMMERCE"—COAL DEPOSITED WITHIN A STATE FOR LATER TRANSPORTATION—TAXATION.

Complainant shipped coal from Pennsylvania to its own order to a dock in New Jersey, where it was transferred from the cars either into bottoms for continued transportation to consignees then determined upon, or, when no bottoms were available, the coal was dumped onto a dock, from which it was later transferred to bottoms as occasion required. *Held*, that the coal so temporarily stored at the dock ceased to be "interstate commerce," notwithstanding the intention to transship, and was therefore subject to state taxation, under the rule that, to claim exemption from taxation under the commerce clause of the federal Constitution, there must be a continuous movement of the merchandise in interstate commerce, pursuant to an existing contract of sale or consignment.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 123–136, Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 4, pp. 3724–3731.]

In Equity. Suit by the Susquehanna Coal Company against the Mayor and Common Council of the City of South Amboy and another. Bill dismissed.

James B. Vredenburgh and Alan H. Strong, for complainant.
Frederic M. P. Pearse, for defendants.

RELLSTAB, District Judge. The complainant is a corporation of the state of Pennsylvania, engaged in mining, buying, selling, and shipping coal. The city of South Amboy is a municipality of the state of New Jersey, bordering on tidewater. The complainant seeks to set aside taxes assessed by such municipality on its coal for the years 1906, 1907, and 1908, and to restrain it from seizing and selling the same, or in any way interfering with it, upon the ground that such property was in transit across the state of New Jersey, from the state of Pennsylvania, to states beyond, and the taxes were imposed in violation of article 1, § 8, cl. 3, of the Constitution of the United States, relating to interstate commerce.

The coal taxed was owned by complainant, and stored within the defendant municipality awaiting further shipment; and the question is whether the coal obtained a situs in the state of New Jersey for taxing purposes. The complainant shipped its coal from its mines in Pennsylvania, to New York and states east thereof, by the Pennsylvania Railroad, across New Jersey, to leave the latter state at Harsimus Cove, Greenville, or South Amboy piers, the termini of such railroad on New York Harbor. The cars reaching Harsimus Cove and Greenville were floated across the harbor and transferred to railroads on the opposite side. The bills of lading for the coal thus shipped were to designated purchasers as consignees, while those of

the coal arriving at South Amboy were consigned to complainant at such place. This latter coal was intended to be transferred to bottoms at tidewater at that point, and shipped to states east of New Jersey. This coal was forwarded from the mines on orders from the complainant's Philadelphia agents, who issued such orders upon requisitions made upon them from complainant's New York agents. Neither the agents at the mines nor at Philadelphia knew for which particular customers the coal thus forwarded to South Amboy was intended. Complainant had a number of regular customers east of New Jersey, to whom it promised to make deliveries on monthly contracts. The exact requirements of such customers, in tonnage and kind of coal, were known only to the New York agents. These agents from time to time totaled such requirements, plus other orders for coal, and issued their requisition, based upon such totals, to the Philadelphia agents. Such requirements, and the shipments made thereunder, varied in tonnage and kind of coal. At South Amboy complainant had an agent who, upon the orders of the New York agents, superintended the loading upon such bottoms of the kind and amount of coal required for designated customers. When so loaded, the master of the bottoms issued bills of lading in the name of the complainant as shipper, and particular persons as consignees. These bills of lading were sent to complainant's New York agents, whereupon the latter made out invoices to the consignees. Up to the time of loading the bottoms the title of the coal was in complainant.

If, upon arrival of the coal at South Amboy, bottoms were on hand to take the kind of coal arriving, such coal was transferred from the cars to the bottoms. If not, such coal was dumped into a coal depot or storage yard of the railroad company, located about 2,000 feet from the piers, equipped with derricks for the loading and unloading of coal, and where the different kinds of coal of the complainant were put into piles, which would be subsequently transferred into bottoms; not necessarily the first bottoms arriving, as the preference was given to coal subsequently arriving and still in cars. In the year 1906 the expense of dumping the coal from the cars and its subsequent transfer into bottoms was borne by the railroad company. Subsequently such expense was borne by complainant. By this storage of coal complainant obtained two beneficial results: First, cars arriving when no bottoms were on hand could be released, and demurrage charges saved; second, when bottoms arrived, and no cars were on hand containing the kinds of coal desired, such vessels could be loaded from the piles, resulting in a saving of time in the departure of such bottoms.

The basis for the taxes of all three years is the same. Those of 1906 were attacked by certiorari proceedings in the New Jersey state courts; the ground of illegality there asserted being the same as raised in the present proceedings. The state courts sustained such taxes. Susquehanna Coal Co. v. South Amboy, 76 N. J. Law, 412, 69 Atl. 454, affirmed 77 N. J. Law, 796, 72 Atl. 361. Complainant having elected to test the legality of the taxes of 1906 in the state courts, that question is res adjudicata.

The provision of the United States Constitution, relied upon by the complainant as furnishing immunity from these taxes, is as follows:

"The Congress shall have the power * * * to regulate commerce * * * among the several states:" Article 1, § 8, cl. 3.

This provision does not comprehend taxes, except when directly imposed upon articles in course of commerce among the states. Brown v. Houston, 114 U. S. 622, 5 Sup. Ct. 1091, 29 L. Ed. 257.

Assuming, but not deciding, that the coal in question, before it was dumped into the storage yard at South Amboy, was "interstate commerce," I am satisfied that under the authorities, in the circumstances, and the purposes of its subsequent storage at South Amboy, it lost its character as "interstate commerce," and became a part of the general mass of the property in New Jersey subject to taxation. The coal in storage was the property of the complainant. It had not been sold or set aside to any purchaser. It was there, not because the carriage to any particular consignee had been interrupted by any of a number of causes that may occur in transportation, but because it had reached its destination—not the ultimate, but the intermediate, destination. It had been consigned to South Amboy to the shipper's own order, and its storage was for the benefit of the shipper, and not the carrier. It was undoubtedly intended to go further, but not on that carriage. It was there at rest, no longer in transit, and could, at the will of the shipper, be forwarded to any point within as well as without the state. Any further shipment would be in response to new orders, and would be a new and different carriage. In General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct. 475, 52 L. Ed. 754, and Lehigh & Wilkes-Barre Coal Co. v. Junction (Err. & App.) 75 N. J. Law, 922, 68 Atl. 806, 15 L. R. A. (N. S.) 514, the courts reviewed the state and United States decisions dealing with the taxation of property brought into a state, and which was intended to be shipped beyond it, and in which the question whether such property was engaged in interstate commerce was the determining factor on the right to tax. In the former case it was held:

"Merchandise may cease to be interstate commerce at an intermediate point between the place of shipment and ultimate destination; and if kept at such point for the use and profit of the owners, and under the protection of the laws of the state, it becomes subject to the taxing and police power of the state."

And in the latter, which was followed by Susquehanna Coal Co. v. South Amboy, supra, it was held:

"To claim exemption from taxation under the protection of the commerce clause of the federal Constitution, there must be a continuous movement of merchandise in interstate commerce; that is, transportation from one state to another pursuant to some existing contract of sale or consignment."

These cases control the present one, and the bill is dismissed.