# Richmond

## T. S. SOUTHGATE AND COMPANY, INC. v.
## COMMONWEALTH OF VIRGINIA.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Hugh W. Davis* and *William L. Parker*, for the plaintiff in error.

*John N. Sebrell,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

T. S. Southgate and Company, Incorporated, is a Virginia corporation with its principal place of business at Norfolk. The business of this corporation is the negotiation of sales of sugar. It acts in the capacity of broker for this one commodity and its two principals are the National Sugar Refining Company of New Jersey and the Porto Rican-American Sugar Refinery of Porto Rico and New York.

The Southgate Company obtained a license from the city of Norfolk to conduct a general brokerage business. Under its application for the license its agents represented that the gross profits for each year aggregated a certain amount and, accordingly, paid the license tax required under the license ordinance upon said amount. Later, the city by its auditors ascertained that the gross profits of the corporation were in excess of those reported, and thereupon the Commissioner of the Revenue for the city assessed the corporation for additional license taxes for the years 1931, 1932 and 1933. This additional amount aggregated $1,300 and an action was instituted against the corporation for that amount. The court below entered judgment against it for the amount claimed by the city and error is assigned by the corporation to this judgment.

The corporation claims that the judgment is based upon an amount which includes commissions derived by it on sales made in interstate commerce.

The material portion of the ordinance is as follows: "Every person doing business in the city, who receives or distributes provisions and merchandise, including flour, hay, or grain, shipped into the state for distribution on account of the shipper, or who participates in the profits ensuing from or accruing out of the sales of such provisions and merchandise, including flour, hay or grain, or who invoices such sales and collects the money therefor, shall be deemed to be a broker

who receives or distributes provisions and merchandise, including flour, hay or grain, and shall pay a license tax as follows; provided, however, that every person paying the tax provided for in this section shall be exempt from the payment of all merchant's license taxes provided for in this ordinance.

· "Each person whose gross profits for the year ending April 30, 1933, do not exceed $2,000.00 shall pay $75.00; where they exceed $2,000.00, but not $3,000.00, $100.00.

· "Where they exceed $3,000.00 but not $4,000.00, $125.00; and for every $1,000.00 or fraction thereof over $4,000.00, $25.00 additional.

"Provided, however, that where the gross profits do not exceed $1,000.00, the license tax on said business shall be $50.00 per year."

·- The sugar refiners used a storehouse in Norfolk. They shipped sugar to Norfolk and it was placed in the storehouse. The stock of sugar kept there was used to fill orders and from time to time it was replenished so that a sufficient supply would be on hand to fill the orders booked and to take care of future orders. On occasions there would be a certain quantity of sugar in the storehouse which would be insufficient to fill the orders on hand and when a cargo arrived, which, added to the quantity on hand in the storehouse was sufficient to fill orders, the orders would be filled and the quantity which remained, if any, would be stored to await other orders. The shipments so made, prior to their arrival in Norfolk, were not designated for any particular orders or distribution and they were placed with the common stock in the storehouse.

Counsel for the corporation most earnestly contends that the license tax has been assessed on commissions on sales of sugar which were shipped in interstate commerce but when we advert to the evidence it fails to show that the corporation has been taxed on such commissions. The testimony of the Commissioner of the Revenue shows clearly that in computing the tax, deductions were made for all commissions earned upon "direct shipments from New York to Virginia, North Carolina, South Carolina and other points." Thus, it

appears that the commissions earned upon shipments in interstate commerce were not taxed.

Mr. Thornton, the president of the corporation, testified that all shipments other than those direct shipments from New York to the purchasers in Virginia and the Carolinas, commissions upon which were excluded from the tax, were received at the storage house in Norfolk and from there the distribution was made. When these shipments arrived in Norfolk they became commingled with the general mass of property in Virginia and their interstate character ceased to exist.

When goods are shipped from one State into another and in the latter placed in storage to be subsequently distributed, the interstate character ends. This rule applies here. It, therefore, is not necessary to follow the argument of the counsel and discuss the cases he has cited touching commissions earned from mixed shipments—that is, shipments that are both interstate and intrastate commerce, because as we have already seen, according to the undisputed testimony, deductions were made in computing the tax for all interstate shipments.

In *General Oil Co.* v. *Crain*, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754, it was held that, where oil was transported in tank cars from wells in Pennsylvania and Ohio to Memphis, Tennessee, and from the latter place distributed to points in other States, it ceased to be interstate commerce when it was stored in Memphis and it then became subject to State taxation in Tennessee.

In *American Steel and Wire Co.* v. *Speed*, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538, the company was a New Jersey corporation with its place of business in Chicago and it owned and operated many plants in several States where wire nails were made. It selected Memphis as a distributing point. A transfer company was selected to receive the goods in Memphis, store them and later distribute them. A Tennessee merchant's tax was imposed upon the corporation and it sought to be relieved of the tax on the ground that the goods stored in the warehouse in Memphis had not become commingled

with the property in Tennessee and had acquired no taxable situs there, but the court held adversely to the contention of the corporation. It held that the goods were not in transit but on the contrary had reached their destination at Memphis and were there held to be later sold and distributed. Under such circumstances the tax was upheld.

A most exhaustive opinion was rendered by Judge John J. Parker of the U. S. Circuit Court of Appeals (Fourth Circuit) in the case of *Atlantic Coast Line Railroad Company* v. *Standard Oil Company of New Jersey*, 12 F. (2d) 541, 60 A. L. R. 1456, where this subject was ably discussed. The question to be determined in that case was whether rail shipments of gasoline and oil made by the Standard Oil Company in tank cars from its storage plant at Wilmington, North Carolina, by intrastate routes, to its local stations and tank car customers at other points in North Carolina were shipments in interstate or intrastate commerce. The gasoline and oil had been received in Wilmington from South Carolina and Louisiana by tank steamers of the oil company and it was conceded that the shipments to Wilmington were interstate shipments but the court held that after the gasoline and oil reached Wilmington and came to rest there they lost their interstate character. Following the opinion in this case as reported in A. L. R. is an elaborate annotation in which many cases are cited and discussed. See 60 A. L. R. 1465.

Our conclusion is that no license tax has been assessed against commissions earned on shipments in interstate commerce. We think that the other points made are not material in the decision of the case.

The judgment is affirmed.

*Affirmed.*