**DALLAS COUNTY APPRAISAL DISTRICT and Foy Mitchell, Chief Appraiser of the Dallas County Appraisal District, Appellants,**

v.

**L.D. BRINKMAN & COMPANY (TEXAS), INC. and Carnation Company, Appellees.**

No. 05–84–01270–CV.

Court of Appeals of Texas, Dallas.

Oct. 31, 1985.

Rehearing Denied Dec. 11, 1985.

Peter G. Smith, Saner, Jack, Sallinger & Nichols, Dallas, for appellants.

Brett A. Ringle, Shank, Irwin & Conant, Dallas, for appellees.

Before SPARLING, ALLEN and MALONEY, JJ.

MALONEY, Justice.

This is an appeal from a determination that certain property held in warehouses in Dallas County is not subject to ad valorem taxation in the State of Texas. The appeal involves an interpretation of TEX.TAX CODE ANN. § 11.01. Appellants, Dallas County Appraisal District and its chief appraiser contend that all of the inventory of appellees, L.D. Brinkman & Company (Texas), Inc. and Carnation Company, that was in their warehouses on the first day of January, was subject to taxation. Appellees contend the trial court correctly excluded a percentage of the inventory from taxation because that percentage would be shipped out of state within 175 days.

Appellants, in four grounds of error, argue that (1) the trial court erred in determining that the appraised market value of the inventory of Brinkman was, for ad valorem tax purposes, $5,783,391 and not $10,186,976 on January 1, 1982 and $5,967,310 and not $10,435,130 on January 1, 1983 and (2) the trial court erred in determining the appraised market value of the inventory of Carnation was, for ad valorem tax purposes, $6,413,688 and not $8,865,539. We agree.

The trial court excluded from the appraised value of Brinkman's inventory that proportion of the inventory which Brinkman shipped out of state within 175 days of its arrival in Texas. This amounted to 47.4% of Brinkman's January 1, 1982 inventory. Similarly, the trial court excluded 30% of the appraised value of Carnation's inventory on January 1, 1982, which was the proportion of its inventory which Carnation shipped out of state within 175 days of its arrival in Texas. Thus, the trial court excluded or deducted that proportion of the inventory which it found was only temporarily in the state. It accordingly rendered judgment that Brinkman's inventory on January 1, 1982 had an appraised market value of $5,783,391, which was the value of the total inventory, $10,186,976, less the value of the goods shipped out of state within 175 days. It also rendered judgment that Brinkman's inventory on January 1, 1983 had an appraised market value of $5,967,310, the value of the total inventory, $10,435,130, less the value of the goods shipped out of state within 175 days. Finally, according to the judgment, the appraised market value of Carnation's January 1, 1982 inventory was $6,413,688, which was the value of the total inventory, $8,865,539, less the value of the goods shipped out of state within 175 days. The trial court based these calculations on stipulated facts. None of the relevant facts in this case are in dispute. The dispute in this case involves issues of legal interpretation.

The trial court rendered judgment for appellees based on TEX.TAX CODE ANN. § 11.01(d) (Vernon 1982), the so-called "free-port" law. This statute reads as follows:

(d) Goods, wares, ores (other than oil, gas and other petroleum products), and merchandise are presumed to be in interstate commerce and/or are *not to be located in this state for longer than a temporary period* if the property is:

(1) transported from outside this state into the state to be forwarded outside this state;

(2) detained in this state for assembling, storing, manufacturing, processing, or fabricating purposes; and

(3) not located in this state for longer than 175 days. [Emphasis added].

TEX.TAX CODE § 11.01(c) (Vernon 1982) declares that:

(c) This state has jurisdiction to tax tangible personal property if the property is:

(1) *located in this state for longer than a temporary period;*

(2) temporarily located outside this state and the owner resides in this state; or

(3) used continually, whether regularly or irregularly, in this state. [Emphasis added].

Thus, if property is only temporarily located in Texas and is not used continually in Texas, it is not within Texas' taxing jurisdiction. If "goods, wares, ores ... and merchandise" meet the requirements of section 11.01(d), they are "presumed" to be only temporarily located in Texas.

The stipulated evidence shows that appellees' goods met requirements (2) and (3) of section 11.01(d)'s presumption of temporary location in this state. The parties disagree over whether the goods met requirement (1). The appraisal district argues that the goods were not "to be forwarded" out of state, since appellees had no specific intention, with respect to most of the particular goods in question, to forward those goods out of state. Appellees argue that a specific intention to forward particular goods is not required when, as here, the taxpayer expected to forward a certain definite percentage of those goods out of state.

We conclude, however, that we need not resolve or even address this particular dispute. We hold that, regardless of whether appellees' property qualifies for the statutory presumption of section 11.01(d), the record shows conclusively that the property was in Texas "for longer than a temporary period."

The Constitution of the State of Texas provides that "all real property and tangible personal property in this State ... shall be taxed in proportion to its value...." TEX. CONST. art. VIII, § 1. The Texas Constitution further provides that "all laws exempting property from taxation other than the property mentioned in this Section shall be null and void." TEX. CONST. art. VIII, § 2. Thus, under the Texas Constitution all real and tangible personal private property "in this State" is subject to taxation unless it comes under an exemption authorized in the Texas Constitution. *City of Wichita Falls v. Cooper*, 170 S.W.2d 777, 780 (Tex.Civ.App.—Fort Worth 1943, writ ref'd); *see City of Beaumont v. Fertitta*, 415 S.W.2d 902, 909–12 (Tex.1967). Principles of federal law, of course, may—and do—limit this power to tax. *See e.g., Calvert v. Zanes-Ewalt Warehouse, Inc.*, 502 S.W.2d 689 (Tex.1974), appeal dismissed, 416 U.S. 923, 94 S.Ct. 1921, 40 L.Ed.2d 279 (1974). Hence, subject only to federal limitations and exemptions set forth in the Texas Constitution, the State of Texas, through its political subdivisions,[1] has the power to tax any real and tangible personal private property in the state.

Since "jurisdiction to tax" means the legitimate power to tax, section 11.01, which defines the state's taxing jurisdiction over real and tangible personal property, also defines the limits of the legitimate power of the State of Texas and its political subdivisions to tax such property. *See Great Southern Life Insurance Co. v. City of Austin*, 112 Tex. 1, 9–10, 13, 243 S.W. 778, 780, 782 (1922). If, however, the legislature were to define taxing jurisdiction in such a way that property subject to taxation under the Texas Constitution and federal law was not subject to taxation under the statutory definition of taxing jurisdiction, the legislature would be indulging in an unconstitutional attempt to grant an exemption from taxation. *See State v.*

---

1. TEX. CONST. art. VIII, § 1–e prohibits the levy of State ad valorem taxes.

*Southwestern Gas & Electric Co.*, 145 Tex. 24, 26, 193 S.W.2d 675, 677 (1946) (the selection of subjects of taxation is itself an exemption of what is not selected); *Dickison v. Woodmen of the World Life Insurance Society*, 280 S.W.2d 315, 318 (Tex.Civ. App.—San Antonio 1955, writ ref'd) (legislature has no power, by definition and classification of property, to exempt it from taxation when the property does not *in fact* come under a constitutionally authorized exemption). Therefore, section 11.01, to the extent that it is valid, can only be a legislative reflection of Texas constitutional and federal principles governing the power of political subdivisions of the State of Texas to tax real and tangible personal property.

Consequently, in deciding the issue before us, namely, whether appellees' goods were in Texas only temporarily and thus not subject to taxation, we look beyond section 11.01 to the Texas constitutional and federal principles which are the foundation of section 11.01. Indeed we must look beyond section 11.01 since the statute does not define the term "located in the state for longer than a temporary period." Section 11.01(d) outlines the requirements for a *presumption* that goods are *not* "located in the state for longer than a temporary period." Yet, because it does not define this term, it is necessary to look to Texas constitutional and federal law to see what, if anything, can overcome the section 11.01(d) presumption, if it is established.

■ We conclude that goods are located in the state for longer than a temporary period if, under federal law, they are in the state on more than a transitory basis. *Greyhound Lines v. Board of Equalization for the City of Fort Worth*, 419 S.W.2d 345, 349 (Tex.1967). Goods are in the state on a transitory basis if they are in "interstate transit." *See Zanes-Ewalt Warehouse*, 502 S.W.2d at 692. Goods are *not* in interstate transit if there is an interruption in the continuity of transit. *Id.* If the owner halts the transit, "not in necessary delay or accommodation to the means of transportation . . . but for the business

purposes and profits of the company," *Id.*, quoting *General Oil Co. v. Crain*, 209 U.S. 211, 230, 28 S.Ct. 475, 482, 52 L.Ed. 754 (1908), then there is an interruption in the continuity of transit and the goods are taxable in the state, *Zanes-Ewalt Warehouse*, 502 S.W.2d at 692–93. When an owner brings goods from out of state to a central depot and separates goods presold to buyers in other states from goods which may be sold in state or out of state, he has, nevertheless, detained all the goods, even those presold to out of state buyers, for his "business purposes and profits" and not "in necessary delay or accommodation to the means of transportation." *General Oil*, 209 U.S. at 230–231, 28 S.Ct. at 482. Thus, in such a case, the owner interrupts the continuity of transit for all the goods, and all the goods are taxable in the state in which the depot is located. *Id.; cf. Carson Petroleum Co. v. Vial*, 279 U.S. 95, 49 S.Ct. 292, 73 L.Ed. 626 (1929).

■ In the present case, substantially all of the inventory in appellees' warehouses came from out of state. Ten percent of the inventory in Brinkman's warehouse was presold to out-of-state customers, and the balance was subject to sale and shipment either in state or out of state as orders came in. Even though Brinkman separated its presold goods from the rest of the goods in its warehouse, it is clear that, under the rule of *General Oil Co. v. Crain*, the goods in Brinkman's warehouse were not in interstate transit and so were within the taxing jurisdiction of this state. All of Carnation's inventory was subject to sale and shipment either in state or out of state. Thus, all of Carnation's inventory was likewise out of interstate transit and within the taxing jurisdiction of the State of Texas. *Zanes-Ewalt Warehouse*, 502 S.W.2d at 690–93; *cf. Michelin Tire Corp. v. Wages*, 423 U.S. 276, 280, 96 S.Ct. 535, 538, 46 L.Ed.2d 495 (1976) (goods stored in distribution warehouse for later shipment to six states not "in transit"). Consequently, appellees were not entitled to deduct from the valuation of their warehouse inventories the value of the goods they

shipped out of state. We therefore conclude that all of the inventory appellees held in their warehouses on the relevant tax dates was subject to taxation. Accordingly, we sustain all of appellants' four points of error. We reverse and render judgment, in accordance with the stipulated evidence, that the proper appraised market value of appellee Brinkman's inventory subject to ad valorem taxation in the State of Texas was $10,186,976 on January 1, 1982 and $10,435,130 on January 1, 1983, and that the proper appraised market value of appellee Carnation's inventory subject to ad valorem taxation in the State of Texas was $8,865,539 on January 1, 1982.

Reversed and rendered.