

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

December 19, 1997

The Honorable Bill Ratliff
Chair, Finance Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. DM-463

Re: Whether freeport exemption from ad valorem tax applies to property sold to an in-state owner who uses it to manufacture products that are shipped out of state (RQ-932)

Dear Senator Ratliff:

You ask about the interpretation of the freeport exemption from ad valorem tax,[1] created by article VIII, section 1-j of the Texas Constitution and implemented by section 11.251 of the Tax Code. The typical freeport exemption applies to property that moves into and out of the state but is not exempt from state tax as a burden on interstate commerce,[2] because a break in the interstate transit of the property subjects it to state property tax.[3] As well as applying to property brought into the state, the Texas freeport exemption applies to property acquired in the state that is transported out of the state within 175 days. Thus, the Texas freeport exemption applies to "business inventories destined for out-of-state shipment."[4] Article VIII, section 1-j, adopted in 1989,[5] provides in part:

> (a) To promote economic development in the State, goods, wares, merchandise, other tangible personal property, and ores, other than oil,

---

[1]Section 11.01 of the Tax Code provides that "[a]ll real and tangible personal property that this state has jurisdiction to tax is taxable unless exempt by law." The person who owns property on January 1 of each year is liable for ad valorem tax imposed for that year. Tax Code §§ 21.02 (tangible personal property taxable by taxing unit if it is located there on January 1), 23.01 (all taxable property appraised at its market value as of January 1), 32.01 (on January 1 of each year, tax lien attaches to property to secure payment of taxes, penalties and interest).

[2]U.S. CONST. art. I, § 8, cl. 3; *see Bacon v. Illinois*, 227 U.S. 504 (1913).

[3]*See Braniff Airways, Inc. v. Nebraska State Bd. of Equalization*, 347 U.S. 590, 597-98 (1954); *Dallas County Appraisal Dist. v. Brinkman*, 701 S.W.2d 20, 23 (Tex. App.--Dallas 1985, writ ref'd n.r.e.); Attorney General Opinion H-1308 (1978) at 3.

[4]TEX. LEG. COUNCIL, *Analyses of Proposed Constitutional Amendments, November 7, 1989 Election*, at 23.

[5]Tex. S.J. Res. 11, § 2, 71st Leg., R.S., 1989 Tex. Gen. Laws 6415, 6415-17; *see* Constitution of Texas--Adopted Amendments, 71st Leg., 6th C.S., 1989 Tex. Gen. Laws 25, 32 (following index).

natural gas, and other petroleum products, are exempt from ad valorem taxation if:

> (1)    the property is acquired in or imported into this State to be forwarded outside this State, whether or not the intention to forward the property outside this State is formed[6] or the destination to which the property is forwarded is specified when the property is acquired in or imported into this State;

> (2)    the property is detained in this State for assembling, storing, manufacturing, processing, or fabricating purposes by the person who acquired or imported the property; and

> (3)    the property is transported outside of this State not later than 175 days after the date the person acquired or imported[7] the property in this State.

Political subdivisions that acted before April 1, 1990, could tax such property.[8]

Section 11.251 of the Tax Code defines "freeport goods" as "property that under Article VIII, Section 1-j, of the Texas Constitution is not taxable"[9] and provides that "[a] person is entitled to an exemption from taxation of the appraised value of that portion of the person's inventory or property consisting of freeport goods."[10] The statute also establishes procedures for determining the value of freeport goods in the taxpayer's inventory or property.[11]

Your opinion request arises in the context of a particular fact situation, which you present as follows:

> The present situation involves Alliance Compressors, a company that manufactures air conditioning compressors. The property in question consists of the compressors and related parts and raw materials. Alliance assembles

---

[6]See *Dallas County Appraisal Dist. v. Brinkman*, 701 S.W.2d at 22 (appraisal district argued under prior freeport statute that property owner must intend to forward specific goods out of state, as opposed to forwarding percentage of such goods).

[7]Property "imported into this State" includes property brought into the state. Tex. Const. art. VIII, § 1-j(c)(2).

[8]*Id.* art. VIII, § 1-j(b).

[9]Tax Code § 11.251(a).

[10]*Id.* § 11.251(b).

[11]*Id.* § 11.251(c) - (h) (exemption for freeport goods determined on basis of data for prior year).

compressors which are sold to Trane Air Conditioning Company, which in turn assembles the compressors into air conditioning units, many of which are transported to out of state buyers.

On the basis of this situation, you ask the following question:

> Is a property owner allowed an exemption pursuant to the provisions of Article VIII, Section 1-j, Texas Constitution for property of the type that otherwise meets the requirements of that provision, if the property is not sold or transported out of the state by them, but is instead sold to an in-state purchaser who uses the property in manufacturing other items which are then transported out of state?

The only question you raise relates to the fact that Alliance Compressors does not itself forward the compressors out of state but sells them to another in-state manufacturer who incorporates them into air conditioners that are sold out of state.[12] You ask us to assume that some of Alliance's property satisfies the requirements for the freeport exemption explicitly stated in article VIII, section 1-j(a) of the Texas Constitution.[13] For purposes of discussion, we will assume that on a specific date Alliance Compressors acquires or imports raw materials and related parts, that Alliance manufactures the raw materials and related parts into compressors and sells the compressors to Trane, and that Trane incorporates them into air conditioners, some of which are transported out of state within 175 days of the specific date on which Alliance acquired or imported the raw materials and related parts. We will also assume that Alliance detained the property in Texas "for assembling, storing, manufacturing, processing, or fabricating purposes," and that the taxing unit at issue did not choose to continue taxing such property.[14]

A review of the legislative history of the constitutional and statutory provisions authorizing the freeport exemption will help us answer your question. An earlier freeport statute[15] adopted without constitutional authorization was found to be invalid to the extent it attempted to exempt property not in interstate commerce,[16] and the legislature subsequently proposed the constitutional amendment. Under the earlier freeport statute, "[p]roperty brought into Texas temporarily to be

---

[12]We do not consider any questions as to the availability of the freeport exemption to Trane.

[13]A decision that the freeport exemption applies to any property requires evidentiary showings and the resolution of fact questions. We cannot make such findings in an attorney general opinion, but we can assume that fact-findings have been made.

[14]Tex. Const. art. VIII, § 1-j(a)(2), (b).

[15]Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, 1979 Tex. Gen. Laws 2217, 2233 (formerly codified at Tax Code § 11.01).

[16]See Dallas County Appraisal Dist., 701 S.W.2d at 23.

processed before shipment to other states, such as cloth to be sewn into blue jeans or microprocessor chips to be assembled into computers, was exempted from taxation."[17] A bill analysis for the resolution proposing article VIII, section 1-j, stated that the proposed amendment "would apply to property acquired in Texas, as well as to property imported into the state."[18] It further stated that "[t]his would avoid any discrimination against Texas-produced goods that are kept in the state for processing--for example, circuit boards used in personal computers or oranges squeezed into juice."[19] Thus, the constitutional amendment was understood to exempt Texas goods that became component parts of items shipped out of state.

The legislation adopted to implement article VIII, section 1-j of the Texas Constitution tracked the three subsections of the constitutional provision that describe the goods subject to the exemption,[20] and also required freeport goods to be "under the continuous ownership of the person who transports the property out of this state from the time the property is acquired by that person for transportation out of this state."[21] The next session of the legislature repealed the provision requiring continuous ownership of the goods as well as the subsections tracking the constitutional language.[22] An analysis of the proposed legislation stated as follows:

> HB 1859 would correct an error in the legislation passed in 1989 to implement the "freeport" constitutional amendment. The Tax Code currently requires that, in order to qualify for exemption, property must be under the continuous ownership of the person who ships the property out of state from the time the property was acquired by that person. However, manufacturers commonly sell their products "FOB the plant," so that ownership technically is transferred on the plant's loading dock. Some taxing jurisdictions, citing the Tax Code, have refused to grant this type of good a "freeport" exemption, although the Constitution does not impose this limitation.[23]

We agree with the bill analysis that the constitutional provision does not limit the exemption to property owned by a single person during the time it is in Texas. It states three conditions to be

---

[17]House Research Organization, Bill Analysis, C.S.S.J.R. 11, 71st Leg., R.S. (1989) at 2.

[18]*Id.* at 3.

[19]*Id.*

[20]Tex. Const. art. VIII, § 1-j(a)(1) - (3).

[21]Act of May 29, 1989, 71st Leg., R.S., ch. 534, § 1, 1989 Tex. Gen. Laws 1749, 1750 (codified as Tax Code § 11.251).

[22]Act of May 22, 1991, 72d Leg., R.S., ch. 504, § 1, 1991 Tex. Gen. Laws 1770, 1771.

[23]House Research Organization, Bill Analysis, H.B. 1859, 72d Leg. (1991) at 2.

met to exempt certain types of tangible personal property from ad valorem taxation. The first condition is as follows:

> (1) the property is acquired in or imported into this State to be forwarded outside this State, whether or not the intention to forward the property outside this State is formed or the destination to which the property is forwarded is specified when the property is acquired in or imported into this State.[24]

This subsection does not impose any condition of continuous ownership by one person. The second and third conditions do include references to the person who acquires or imports the property:

> (2) the property is detained in this State for assembling, storing, manufacturing, processing, or fabricating purposes *by the person* who acquired or imported the property; and

> (3) the property is transported outside of this State not later than 175 days after the date *the person* acquired or imported the property in this State.[25]

Thus, the person who acquired or imported the property in this state must also detain it in the state "for assembling, storing, manufacturing, processing, or fabricating purposes," and the date on which that person acquired or imported the property starts the 175-day period during which the property must be transported out of the state. These provisions do not require the person who acquired or imported the property in this state to own the property continuously until it is transported out of state. This construction of the constitutional provision was explicitly adopted as subsection 11.251(k) by a 1993 amendment, providing as follows:

> Property that meets the requirements of Article VIII, Sections 1-j(a)(1) and (2), of the Texas Constitution and that is transported outside of this state not later than 175 days after the date the person who owns it on January 1 acquired it or imported it into this state is freeport goods regardless of whether the person who owns it on January 1 is the person who transports it outside of this state.[26]

---

[24]Tex. Const. art. VIII, § 1-j(a)(1).

[25]Tex. Const. art. VIII, § 1-j(a)(2), (3) (emphasis added).

[26]Act of May 25, 1993, 73d Leg., R.S., ch. 779, § 1, 1993 Tex. Gen. Laws 3056, 3056.

This provision makes express the intent that led to the 1991 amendment.[27]

We note that some portions of section 11.251 of the Property Tax Code assume that freeport property is continuously owned by one person during the 175 days. Subsection 11.251(d), the main provision on valuing freeport goods, does not incorporate this presumption, but it can be found in subsections 11.251(e) and 11.251(f). To determine whether component parts held in bulk were transported out of the state before the expiration of 175 days, subsection 11.251(e) allows the chief appraiser to "use the average length of time a component part was held in this state by the property owner during the preceding year." Subsection 11.251(f) provides as follows:

> If the property owner was not engaged in transporting freeport goods out of this state for the entire preceding year, the chief appraiser shall calculate the percentage of cost described in Subsection (d)[28] for the portion of the year in which the property owner was engaged in transporting freeport goods out of this state. [Emphasis added.]

We do not believe that these subsections undermine the clear language of subsection 11.251(k). Subsections 11.251(e) and (f) may assume that continuous ownership remains in one person, but they do not require it. Moreover, these provisions are relevant to freeport goods that are under the continuous ownership of one person. In any case, subsection 11.251(g) provides another method for valuing freeport goods "[i]f the property owner or the chief appraiser demonstrates that the method provided by Subsection (d) significantly understates or overstates the market value of the property qualified for an exemption."

Your question raises a single legal issue: Is the freeport exemption available for property where the person who acquired or imported it in this state and who detains it in the state "for assembling, storing, manufacturing, processing, or fabricating purposes," does not sell or transport it out of the state, but instead sells it to an in-state purchaser who uses the property in manufacturing other items which are then transported out of state within 175 days of the time the first person acquired or imported it. As our discussion shows, the person who acquires or imports the property and who detains it for appropriate purposes need not own it continuously until it is transported out of state. Moreover, when article VIII, section 1-j was proposed by the legislature, it was understood to exempt Texas goods that became component parts of items shipped out of state.[29]

---

[27]*Id.* The bill was titled "[an act] . . . relating to the ad valorem taxation of cotton." The bill contained provisions relating to the exemption of cotton stored in a warehouse for transportation outside of the state, but subsection 11.251(k) refers to freeport goods generally, not expressly to cotton. *See* Cynthia M. Ohlenforst, Jeff W. Dorrill, & Kathryn A. Christmann, *Taxation*, 47 SMU L. REV. 1649, 1673 (1994).

[28]Tax Code subsection 11.251(d) states how the chief appraiser is to determine the appraised value of freeport goods.

[29]House Research Organization, Bill Analysis, C.S.S.J.R. 11, 71st Leg. (1989) at 3. *See* Tax Code § 11.251(e)
(continued...)

In conclusion, assuming that the property otherwise meets the requirements of article VIII, section 1-j, Texas Constitution, we believe that the freeport exemption is available for the property where it is acquired or imported in this state by a person who detains it in the state "for assembling, storing, manufacturing, processing, or fabricating purposes," even though the property is not sold or transported out of the state by that person, but is instead sold to an in-state purchaser who uses the property in manufacturing other items which are then transported out of state within 175 days of the time the first owner acquired it. The determination that the freeport exemption applies to specific property owned by Alliance and sold to Trane involves questions of fact, which cannot be addressed in the opinion process.

---

[29](...continued)
(in determining market value of freeport goods assembled or manufactured in this state, chief appraiser shall exclude "the cost of equipment, machinery, or materials that entered into and became component parts of the freeport goods but were not themselves freeport goods or that were not transported outside the state before the expiration of 175 days").

## S U M M A R Y

Article VIII, section 1-j of the Texas Constitution establishes an exemption from ad valorem tax for "freeport" goods, that is, certain property destined for shipment out-of-state within 175 days after the date the property was acquired in or imported into the state. The freeport exemption is available to property where it is acquired or imported in this state by a person who detains it in the state "for assembling, storing, manufacturing, processing, or fabricating purposes," even though the property is not sold or transported out of the state by that person, but is instead sold to an in-state purchaser who uses the property in manufacturing other items which are then transported out of state within 175 days of the time the first owner acquired it.

Whether the freeport exemption applies to specific property owned by one person and sold to another involves questions of fact, which cannot be addressed in the opinion process.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General