COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-08-199-CV

 

 

AVIALL SERVICES, INC.                                                       APPELLANT

 

                                                   V.

 

TARRANT APPRAISAL DISTRICT AND                                     APPELLEES

TARRANT APPRAISAL REVIEW
BOARD

 

                                              ------------

 

            FROM THE 17TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This appeal involves the interpretation of an ad
valorem tax exemption.  Appellant Aviall
Services, Inc. appeals the trial court=s grant
of summary judgment in favor of Appellees Tarrant Appraisal District (Athe
District@) and
Tarrant Appraisal Review Board (Athe
Board@).  Aviall=s sole
issue is whether aviation parts that it shipped to a federal enclave located
within the geographical boundaries of Texas were transported Aoutside
this State@ for purposes of the freeport ad
valorem tax exemption as allowed by the Constitution of the State of Texas and
enabling legislation.    

I.      Factual and Procedural
Background 

A.     Aviall
 

The facts are undisputed.  Aviall, one of the world=s
largest suppliers of aviation parts, located its central distribution center in
Irving because both Dallas County and the Grapevine/Colleyville Independent
School District allowed the freeport exemption. 
At its distribution center, Aviall imports, temporarily stores, and then
ships aviation parts to various locations throughout the United States and
other countries.  One of the destinations
to which Aviall ships inventory is the Red River Army Depot (Athe
Depot@),
located in Bowie County near Texarkana, Texas.  


B.     The
Depot 








In 1944, the Depot and its surrounding lands
became a federal enclave under Article I, Section Eight, Clause Seventeen
of the United States Constitution.  This
clause provides that Congress shall have the power Ato
exercise exclusive Legislation in all Cases whatsoever@ over
the District of Columbia and Ato
exercise like Authority over all Places purchased by the Consent of the
Legislature of the State in which the Same shall be, for the Erection of Forts,
Magazines, Arsenals, dock-Yards, and other needful buildings.@  U.S. Const. art. I, ' 8, cl.
17.  

The then-governor of Texas signed two deeds
ceding exclusive jurisdiction of more than 18,000 acres of land to the United
States, with the reservation that the State of Texas retains concurrent
jurisdiction only for service of civil and criminal process on the
premises.  The ceded land remains
physically located within the geographic boundaries of Texas.  See Adams v. Calvert, 396 S.W.2d 948,
949 (Tex. 1965) (recognizing federal enclave remains within geographic
boundaries of State).  The Depot
currently remains under the exclusive jurisdiction and control of the United
States.   

C.     The
shipments at issue








In 2006, Aviall filed an application for a Afreeport
exemption@ with the District, seeking an
exemption in the amount of $277,990,582 for freeport-eligible inventory shipped
during 2005, including $27,486,322 for aircraft parts it had shipped to the
Depot.  Aviall shipped all of the
inventory to the Depot within 175 days from the date it was imported into
Texas.  The District granted an exemption
in the amount of $243,216,654 but denied the exemption for the parts shipped to
the Depot.  Aviall filed a notice of
protest with the Board.  After a hearing,
the Board granted a higher exemption of $250,504,260 but again denied the
exemption for the parts shipped to the Depot in the amount of $27,486,322.   

Aviall paid the tax under protest and filed suit
on August 28, 2006,  challenging the
District and the Board=s denial of the freeport
exemption for the aircraft parts it had shipped to the Depot.  Aviall moved for summary judgment, contending
that the freeport exemption applied to its shipments of inventory to the Depot
and arguing that, as a federal enclave, the Depot is considered Aoutside
this State.@ 
The District and Board also filed a motion for summary judgment, arguing
that Aviall=s shipments of inventory to the
Depot were not eligible for the freeport exemption because they were not
transported outside the geographical boundaries of the state and, therefore,
were not transported Aoutside this State@ within
the meaning of the freeport exemption=s
language in article VIII, section 1-j(a)(3) of the Texas constitution.  The trial court denied Aviall=s motion
and granted the District and Board=s
motion.  Aviall appeals from the final
summary judgment.  

II.     The AFreeport
Exemption@








Article VIII, section 1 of the Texas constitution
provides, in pertinent part, that all real property and tangible personal
property in this State, Aunless exempt as required or
permitted by this Constitution . . . shall be taxed in proportion to its value.@  Tex. Const. art. VIII, ' 1(a),
(b).  In 1989, Texas voters approved an
amendment to the Texas constitution that exempted from ad valorem taxation
personal property temporarily located in this State that is destined for
out-of-State shipment and that is Atransported
outside this State@ not later than 175 days after
the date it is brought into or acquired in Texas.[1]  See generally Tex. S.J. Res. 11
' 2(a),
71st Leg., R.S., 1989 Tex. Gen. Laws 6415, 6415B17. 

Known as the Afreeport
exemption,@[2] the
language of Texas constitution article VIII, section 1-j(a) reads, in pertinent
part, as follows: 

To promote economic
development in the State, goods, wares, merchandise, other tangible property,
and ores, other than oil, natural gas, and other petroleum products, are exempt
from ad valorem taxation if:

 








(1) the property is
acquired in or imported into this State to be forwarded outside this State,
whether or not the intention to forward the property outside this State is
formed or the destination to which the property is forwarded is specified when
the property is acquired in or imported into this State;

 

(2) the property is
detained in this State for assembling, storing, manufacturing, processing, or
fabricating purposes by the person who acquired or imported the property; and

 

(3) the property is
transported outside of this State not later than 175 days after the date
the person acquired or imported the property in this State. 

 

Tex. Const. art. VIII, '
1-j(a)(1)B(3) (emphasis added).[3]


Chapter 11 of the Texas Tax Code is the enabling
legislation for the amendment.  Tex. Tax
Code Ann. ' 11.251 (Vernon 2008).  The statute defines Afreeport
goods@ as Aproperty
that under Article VIII, Section I-j of the Texas Constitution is not taxable@ and
provides that Aa person is entitled to an
exemption from taxation of the appraised value of that portion of the person=s
inventory or property consisting of freeport goods.@   Id. ' 11.251(b).  Local taxing jurisdictions may opt out of
the freeport exemption and continue taxing otherwise exempt property.  See Tex. S.J. Res. 11, '
2(b).  

 

 








III.     Standard of review

We review the trial court=s
summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  Likewise, review of constitutional and
statutory provisions involve matters of law and are reviewed de novo.  Harris County Hosp. Dist. v. Tomball
Regional Hosp., 283 S.W.3d 838, 842 (Tex. 2009).  A plaintiff is entitled to summary judgment
on a cause of action if it conclusively proves all essential elements of the
claim.  See Tex. R. Civ. P.
166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986).  A defendant who conclusively negates at least
one essential element of a cause of action is entitled to summary judgment on
that claim.  IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004); see
Tex. R. Civ. P. 166a(b), (c).

When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court
should review both parties= summary
judgment evidence and determine all questions presented.  Valence Operating Co., 164 S.W.3d at
661.  The reviewing court should render
the judgment that the trial court should have rendered.  Id. 


IV.    Construing
a constitutional provision








In construing the Texas constitution, as in
construing statutes, the guiding rule is to give effect to the intent of the
makers and adopters of the provision in question.  Harris County Hosp. Dist., 283
S.W.3d at 842; City of El Paso v. El Paso Community College Dist., 729 S.W.2d
296, 298 (Tex. 1986).  We presume the
language was carefully selected, and we interpret the words as they are
generally understood.  Harris County
Hosp. Dist., 283 S.W.3d at 842 (citing City of Beaumont v. Bouillion,
896 S.W.2d 143, 148 (Tex. 1995)).  

When interpreting a constitution, we rely heavily
on its literal text to give effect to its plain language.  Id.; Doody v. Ameriquest Mortgage
Co., 49 S.W.3d 342, 344 (Tex. 2001). 
We use the same guidelines used in construing statutes to construe constitutional
provisions.  See, e.g., Meador v. EMC
Mortgage Corp., 236 S.W.3d 451, 452 (Tex. App.CAmarillo
2007, pet. denied).








Under the plain meaning rule, if a provision is
clear and unambiguous, resorting to extrinsic aids and rules of construction is
inappropriate, and the provision should be given its common everyday
meaning.  See City of Rockwall v.
Hughes, 246 S.W.3d 621, 626 (Tex. 2008); State v. Shumake, 199
S.W.3d 279, 284 (Tex. 2006). This rule provides an objective guidepost to the
legislature=s intent and ensures ordinary
citizens are able to Arely on the plain language . . .
to mean what it says.@ 
Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864,
866 (Tex. 1999).  In applying the plain
meaning, we may not by implication enlarge the meaning of any word in a
provision beyond its ordinary meaning when intent as to the meaning may be
gathered from a reasonable interpretation of the provision as it is
written.  Stringer v. Cendant Mortgage
Corp., 23 S.W.3d 353, 354 (Tex. 2000).

V.     Analysis

Aviall contends that, because neither the Texas
constitution nor the enabling statute limits the exemption to inventory shipped
outside the geographical limits of this State, a shipping destination Aoutside
this State@ includes a federal enclave as a
destination beyond the limits of the jurisdiction, sovereignty, legislation, or
control of TexasCeven though it remains located
within the geographic boundaries of Texas. 
The District and Board respond that the constitutional provision and
statute must be given their ordinary meaning, referring only to the geographic
limits of this State, and that terms such as Aoutside
of this State=s jurisdiction@ or Abeyond
the limits of the sovereignty, legislation or control@ of
Texas are not contained in the language of the freeport exemption and,
therefore, cannot be supplied by implication. 
 See Tex. Const. art. VIII,
'
1-j(a)(1)B(3). 








The term AState@ is not
defined either in the constitutional amendment or in the tax code.  Aviall advocates a Abroad@ interpretation
of that term to include jurisdictional, legislative, and sovereign power in
addition to geographical borders.  Aviall
points out that federal enclaves are created under the clause that empowers
Congress to Aexercise exclusive legislation@ over
property that a state voluntarily cedes to the federal government, meaning that
there is an Aactual transfer of sovereignty.@  See Vincent v. Gen. Dynamics Corp.,
427 F. Supp. 786, 795 (N.D. Tex. 1977). 
Relying upon Paul v. United States, 371 U.S. 245, 263, 83 S. Ct.
426, 437 (1963), Aviall further maintains that, absent specific congressional
authorization, a state cannot regulate activities or property within a federal
enclave. 

 The phrase
Aoutside
this State@ in the context of the exemption
from the ad valorem tax refers to location, not jurisdiction or power.  This case does not involve the State=s power
to exercise jurisdiction or legislation over the property or residents of the
Depot.  Nor are the District and taxing
entities attempting to assess taxes on property within the federal enclave that
constitutes the Depot.  Those aspects of
a Astate@ within
the federal system of these United States are not implicated.  The tax is assessed solely on inventory while
it is located on Aviall=s private property at its
distribution center in Irving, Texas.  See
Tex. Tax Code Ann. '' 11.01, 23.01, 32.01 (Vernon
2008).  








Moreover, Aviall=s
interpretation would reverse the long-standing rule to strictly construe tax
exemptions against the taxpayer.  See
River Oaks Garden Club v. City of Houston, 370 S.W.2d 851, 854 (Tex.
1963); ICAN Enter., Inc. v. Williamson County Appraisal Dist., No.
03-06-00594, 2009 WL 1025084, *3 (Tex. App.CAustin
April 17, 2009, pet. denied) (holding trial court properly gave narrow
interpretation for exemption for stored aircraft parts, denying taxpayer=s
application for its storage of entire aircraft).  It is well settled that language granting
exemptions from taxation are not favored and must be strictly and narrowly
construed against the taxpayer.  N.
Alamo Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894,
899 (Tex. 1991); Davies v. Meyer,  541
S.W.2d 827, 829 (Tex. 1976); Am. Hous. Found. v. Harris County Appraisal
Dist., 283 S.W.3d 76, 80 (Tex. App.CHouston
[14th Dist.] 2009, no pet.); Gables Realty Ltd. P=ship v.
Travis Cent. Appraisal Dist., 81 S.W.3d 869, 872 (Tex. App.CAustin
2002, pet. denied).  Exemptions are
subject to strict construction because they undermine the goal of equality and
uniformity by placing a greater burden on some taxpaying businesses and
individuals rather than placing the burden on all taxpayers equally.  N. Alamo Water Supply Corp., 804
S.W.2d at 899; Bullock v. Nat=l
Bancshares Corp., 584 S.W.2d 268, 271B72 (Tex.
1979), cert. denied, 444 U.S. 1016 (1980).  








Additionally, an exemption cannot be raised by
implication but must affirmatively appear, and all doubts are resolved in favor
of the taxing authority and against the taxpayer.  Bullock, 584 S.W.2d at 272.  Thus, the burden of proof of Aclearly
showing@ that an
exemption applies is on the taxpayer, with all doubts resolved against the
taxpayer.  N. Alamo Water Supply Corp.,
804 S.W.2d at 899 (citing Bullock, 584 S.W.2d at 272).

Considering the plain meaning of the clause=s terms
in light of the rules of strict construction for tax exemptions, we cannot
interpret the freeport exemption in a broad manner by implying additional
language that would exempt Aviall=s
shipments to the Depot.  See id.; see
also Leland v. Brandal, 257 S.W.3d 204, 205 (Tex. 2008) (stating that court
may not judicially amend statute by adding words not contained in the statutory
language).  We are not free to enlarge or
judicially amend the constitutional amendment or enabling statute.  Leland, 257 S.W.3d at 205.  This is particularly so because Aviall urges
an interpretation of the constitutional exemption based on a fiction.    

Aviall relies upon United States v. State Tax
Commission of Mississippi, 412 U.S. 363, 378, 93 S. Ct. 2183, 2192
(1973), for a novel argument that the concept of a Afederal
island@ or a Astate
within a state@ requires that we interpret the
exemption in such a manner that transportation of the aviation parts to the
DepotCas a
federal enclaveCis Aoutside
this State,@ even though the Depot is
located within Texas.  But we agree with
the District and Board that this Astate
within a state@ fiction advocated by Aviall has
no application here.    













In State Tax Commission of Mississippi,
Mississippi attempted to regulate wholesale distribution of alcohol by making
the State Tax Commission the exclusive importer and wholesaler of alcoholic
beverages within that State.  Id.
at 412 U.S. at 364, 93 S. Ct. at 2185. 
The Commission adopted a regulation purporting to impose a markup,
essentially a sales tax, on liquor purchased directly from out-of-state
suppliers by post exchanges, officer=s clubs,
and ship=s stores
on four military bases located geographically within the State.   Id. at 366, 93 S. Ct. at 2186.  Two of the four military bases were federal
enclaves.  Mississippi contended that the
Twenty-First Amendment to the Constitution permitted it to regulate Atransportation
or importation [of liquor] into [the] State . . . for delivery or use therein.@  Id. at 367, 373, 93 S. Ct. at 2186,
2190.  The United States argued that the
regulation as to those bases interfered with its exclusive jurisdiction
conferred by Article I, Section Eight, Clause Seventeen of the Constitution.[4]
 Id. at 369, 93 S. Ct. at 2187B88.  Agreeing with the United States, the Supreme
Court reasoned that the transactions on which the markup was sought to be
imposed were strictly between the out-of-state suppliers and the military
facilities, involving goods delivered within the military bases, and nothing
occurred within the State that gave it jurisdiction to regulate the
transaction.  Id. at 371, 93 S.
Ct. at 2189.  Thus, the Court held, the
transactions did not involve Atransportation
or importation into [the] State . . . for delivery or use thereof,@ but
only importation of liquor into the federal enclaves, Awhich >are to
Mississippi as the territory of one of her sister states or a foreign land.=@  Id. at 375, 378, 93 S. Ct. at 2191,
2192 (quoting United States v. State Tax Comm=n of
Miss., 340 F. Supp. 903, 906 (S.D. Miss. 1972)). 








Aviall argues that, if liquor shipped from
outside a state to a federal enclave located geographically within a state has not
been Atransport[ed]
or import[ed] into [t]he State@ within
the meaning of the Twenty-First Amendment, then it necessarily follows that the
liquor must have been transported outside the state.  Even if we accept this reasoning as to the
liquor in  State Tax Commission of
Mississippi, the case is distinguishable because, as pointed out by
the opinion in that case, Mississippi=s
attempt to regulate imported alcohol within the federal enclave in that case
interfered with federal jurisdiction, requiring a distinction to be made in
the relationship between the two territories. 
No one in this case contends the ad valorem tax on Aviall=s
inventory while at Aviall=s distribution center interferes
with federal jurisdiction.  Because of
this distinction, other cases from the Supreme Court provide clearer guidance
regarding the federal enclave and state relationship and the Astate
within a state@ argument.  













Specifically, in Howard v.
Commissioners of Sinking Fund of City of Louisville, the Supreme Court held
that a naval ordnance plant that had been acquired by the United States and
over which the United States exercised exclusive jurisdiction could
nevertheless be subsequently annexed by the City of Louisville because,
although the federal government had exclusive jurisdiction within the ordnance
plant, A[t]he
property did not cease to be a part of Kentucky.  The geographical structure of Kentucky
remained the same.@  344 U.S. 624, 626, 73 S. Ct. 465, 466 (1953)
(emphasis added).  The Court reasoned
that including the enclave within the city=s
boundaries did not affect the use or disposition of the property by the United
States, stating that the A[f]iction of a state within a
state can have no validity to prevent the state from exercising its power over
the federal area within its boundaries, so long as there is no interference
with the jurisdiction asserted by the Federal Government.@  Id. at 626B27, 73
S. Ct. at 467 (emphasis added).  The
Court observed that the sovereign rights in the dual relationship between the
United States and Kentucky were not antagonistic in that instance, so that it
is Afriction,
not fiction, which we must give heed.@  Id. at 627, 73 S. Ct. at 467; see
also Evans v. Cornman, 398 U.S. 419, 423, 90 S. Ct. 1752, 1755 (1970)
(rejecting notion of non-residency in state for voting in Maryland elections by
those residing in a federal enclave and noting that Athe
relationship between federal enclaves and the [s]tate in which they are located
has changed considerably@); M.R.S. v. State, 745
So. 2d 1139, 1140 (Fla. Dist. Ct. App. 1999) (recognizing Howard holding
that Afiction
of a state within a state@ has no validity to prevent
exercise of power by state over federal area within its boundaries, so long as
there is no interference with federal jurisdiction); Cobb v. Cobb, 545
N.E.2d 1161, 1163 (Mass. 1989) (stating state courts have recognized state law
may apply in a federal reservation provided the state does not interfere with
the primary jurisdiction of the federal government); Matter of Salem Transp.
Co., 264 A.2d 47, 49 (N.J. 1970) (per curiam) (permitting regulation of
transportation services to and from military bases); cf. Common Council of
Gloversville v. Town Bd. of Johnstown, 295 N.E.2d 644, 645B46 (N.Y.
1973) (upholding annexation of state-owned land by townships).[5]  Just as the ordnance plant did not cease to
be a part of Kentucky, the Depot in this case did not cease to be a part of
Texas.

We further note that the Supreme Court made a
distinction in State Tax Commission of Mississippi between the State=s
attempt to regulate transactions occurring solely within the federal enclaves
of the military bases, which the Court determined to be impermissible, and the
authority of the State to regulate shipments destined for such bases while
those shipments were passing through Mississippi.  412 U.S. at 377, 93 S. Ct. at 2192.  The distinction seems appropriate here.   








The District determined, and the Board agreed,
that Aviall was not exempt from paying taxes on the inventory temporarily
located in Texas that was later shipped to the Depot.  The taxing entities did not attempt to
interfere with federal jurisdiction by assessing a tax on a transaction
occurring on federally-owned property nor on property located within the
federal enclave; rather, the District and the Board denied the tax exemption
claimed by Aviall on property while it was in Texas.  Unlike the liquor markup in State Tax
Commission of Mississippi, there was no interference with federal
jurisdiction by the taxing entities; hence, no friction.  Therefore, we will not apply the fiction that
the Depot was a foreign country or a sister state to deem that the aviation
parts were shipped by Aviall Aoutside
the State@ when they were shipped to a
location in Bowie County near Texarkana, within the geographic limits of Texas.


Aviall also argues that the purpose, history, and
context of the freeport exemption support the broad interpretation it
urges.  Aviall points to the legislative
history of the constitutional amendment that was submitted to voters as Apromoting
the economic growth, job creation, and fair tax treatment for Texans who export
goods to other states and nations.@  See Tex. S.J. Res. 11.  To promote the amendment, the legislature
also noted that A[t]ax incentives have been an
important part of Texas= successful effort to attract
several major industrial, technological and transportation facilities in recent
years, and the freeport exemption would be a valuable addition to Texas= arsenal
in the battle to diversify the state=s
economy.@  Tex. Legis. Council, Analyses of Proposed
Constitutional Amendments, Nov. 7, 1989, Election.  








Mindful of the enticements that the exemption
provides to companies like Aviall to locate their warehouses and distribution
centers in this State, when construing statutes, we must presume that public
interests are favored over private interests. 
See Tex. Gov=t Code
Ann. '
311.021(5); City of DeSoto v. White, 288 S.W.3d 389, 396B97 (Tex.
2009).  It is in the public interest that
the ad valorem tax be applied to property owners to compensate for a variety of
benefits provided by local services such as fire and police protection, street
lighting, roads and streets, and other incidents of a modern industrial infrastructure.  Virginia Indonesia v. Harris County Appraisal
Dist., 910 S.W.2d 905, 909 (Tex. 1995) (citing Michelin Tire Corp. v.
Wages, 423 U.S. 276, 289, 96 S. Ct. 535, 548 (1976)); see also Exxon
Corp. v. Wisconsin Dept of Rev., 447 U.S. 207, 228, 100 S. Ct. 2109, 2122
(1980) (holding tax must be fairly related to services provided by state,
including police and fire protection and benefit of trained work force).  Additionally, as the Supreme Court has held,
exemptions undermine equality and uniformity by placing a greater burden on
some taxpaying businesses and individuals rather than on all taxpayers
equally.  N. Alamo Water Supply Corp.,
804 S.W.2d at 899.  The public interest
weighs against the broad construction urged by Aviall and in favor of a strict
construction of the freeport exemption.   









Finally, Aviall argues that taxing inventory that
it later ships to the Depot on the basis that it is not Atransported
outside the State@ will increase the cost of
aviation parts sold to the United States. 
Aviall did not raise this issue in its original brief or in its motion
for summary judgment.  Nevertheless, it
is well settled that private parties who contract with and do business with the
United States can be taxed even though the increased financial burden will
ultimately fall on the United States.  See,
e.g., South Carolina v. Baker, 485 U.S. 505, 520, 108 S. Ct. 1355, 1365
(1988); United States v. New Mexico, 455 U.S. 720, 733B35, 102
S. Ct. 1373, 1382B83 (1982); James v. Dravo
Contracting Co., 302 U.S. 134, 160B61, 58
S. Ct. 208, 221 (1937).

VI.    Conclusion

We decline to adopt Aviall=s broad
interpretation of the freeport exemption. 
We hold that Aviall=s
inventory shipped to the Depot, geographically located within this State, was
not transported Aoutside this State@ under
the plain language of the freeport exemption. 
We conclude that the Board and the District were entitled to summary
judgment as a matter of law on the ground that the freeport exemption=s phrase
Aoutside
this State@ does not include the Depot,
located wholly within the boundaries of the state of Texas.  We hold that Aviall=s
aircraft shipment to the Depot was not entitled to the freeport exemption under
article VIII, section 1-j(a)(1)B(3) of
the Texas constitution and section 11.251 of the tax code.  We overrule Aviall=s sole
issue and affirm the trial court=s
judgment.  

 

ANNE
GARDNER

JUSTICE

 

PANEL:  CAYCE, C.J.; LIVINGSTON and GARDNER, JJ.

 

DELIVERED:  October 29, 2009











[1]An earlier freeport
exemption statute adopted without constitutional authorization was held valid
only to the extent that it exempted property in interstate transit, i.e., for
which there was no interruption in the continuity of transit other than
necessary delay or accomodation.  See
Op. Tex. Att=y Gen. No. DM-463 (1997)
(citing Dallas County Appraisal Dist. v. Brinkman, 701 S.W.2d 20, 23
(Tex. App.CDallas 1985, writ ref=d n.r.e.); see
generally Tex. Legis. Council, Analyses of Proposed Constitutional
Amendments, Nov. 7, 1989, Election (Sept. 1989).     





[2]Texas law was patterned
after federal law on goods coming into United States ports and not taxed since
they were Afree@ from a port or tax
location.  See Window on State
Government, A2003 Annual Property Tax
Report: Texas Taxing Units Levy $29 Billion in Local Property Taxes,@ (Nov. 2004), available
at  http://www.window.state.tx.us/taxinfo/proptax/stmt/stmt0411/.






[3]For purposes of section
1-j, tangible personal property includes aircraft and aircraft parts, property
affixed to an aircraft to be transported outside this State, and property,
aircraft, or aircraft parts brought into this State and used for repair or
maintenance of aircraft operated by a certified air carrier.  Id. ' 1-j (c).  





[4]The other two bases were
within the concurrent jurisdiction of the state and federal governments.  Id. 





[5]The Supreme Court has
held that states can regulate and maintain control over certain activities on
federal enclaves, including the right to vote for enclave residents in
state-wide elections.  See Evans,
398 U.S. at 422, 90 S. Ct. at 1754. 
Thus, states like Texas have the ability to regulate voting within its
own federal enclaves, but not with other states in the union.  See, e.g., Tex. Const. art. VI, ' 2 (requiring voters to
be residents of the state of Texas); Okla. Const. art. III, ' 1 (requiring voters to
be Abona fide residents@ of the state of
Oklahoma).